**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

_____

JEAN GENIER,
                              Plaintiff,

                    v.                                    No. 04-CV-163
                                                               (DRH)
MICHAEL J. ASTRUE,[1]
                              Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL**:

MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, New York 12901

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE, ESQ.
United States Attorney for the               Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**[2]

        Plaintiff Jean Genier ("Genier") brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner")

denying her application for benefits under the Social Security Act.  Genier moves for a

finding of disability and the Commissioner cross-moves for a judgment on the pleadings.

_____

        [1]The complaint, which was filed on February 17, 2004, named as the defendant
Jo Anne B. Barnhart, then the Commissioner of Social Security.  On February 12, 2007,
Michael J. Astrue assumed that position.  Therefore, he shall be substituted as the
named defendant pursuant to Fed. R. Civ. P. 25(d)(1).

        [2]  The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge.  See Docket No. 19.

Docket Nos. 9, 11.  For the reasons which follow, the Commissioner's decision is affirmed.

## I.  Procedural History

On July 30, 2001, Genier filed an application for supplemental security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq.[3]  T. 62-65.[4]  On February 7, 2002, the application was denied.  T. 19-22.  Genier requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Thomas Zolezzi on May 14, 2003.  T. 23, 410-444.  The ALJ held a supplemental hearing on October 9, 2003. T. 445.  In a decision dated October 31, 2003, the ALJ held that Genier was not entitled to disability benefits.  T. 9.  On November 5, 2003, Genier filed a request for review with the Appeals Council.  T. 7.  The Appeals Council denied Genier's request for review on January 30, 2004, thus making the ALJ's findings the final decision of the Commissioner.  T. 4-6. This action followed.

## II.  Contentions

Genier contends that the ALJ failed properly to credit her medical sources' opinions, evaluate her credibility, and assess the severity of certain alleged impairments.  Genier also contends that the ALJ's residual functional capacity determination and conclusion that she

---

[3]  Genier previously filed an application for SSI benefits on February 7, 1997, but the application was denied on May 7, 1997.  T. 304, 307, 321.  She filed a second application for SSI benefits on June 17, 1998, which was also denied at the initial and reconsideration levels on October 21, 1998 and June 30, 1999, respectively.  T. 305-306, 311-320, 328-331.

[4]  "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 6.

was not disabled were not supported by substantial evidence in the record.  The Commissioner contends that there was substantial evidence to support the determination that Genier was not disabled.

### III.  Facts

The facts contained in Genier's brief are adopted and are not disputed by the Commissioner, except for any inferences or legal conclusions drawn therein and any reference to evidence related to Genier's prior applications.[5]  Def. Mem. of Law (Docket No. 11) at 5.  Genier, now forty-four years old, has no past relevant work history.[6]  T. 413, 417.

_____

[5]  Genier cites to evidence that was submitted as part of her prior applications. To the extent that Genier may be arguing that the ALJ reopened her prior applications, it is clear that the ALJ did not do so because he did not review the entire record but instead reviewed only the evidence that was submitted as part of her present application.  See Adams v. Barnhart, No. 01 Civ. 10030, 2003 WL 102824, at *10 (S.D.N.Y. Jan. 10, 2003) (noting that if the Secretary reviews the entire record and renders a decision on the merits, the earlier decisions will be deemed to have been reopened, and any claim of administrative res judicata to have been waived by the Secretary) (quotations and citation omitted).  The Court lacks subject matter jurisdiction to review the Commissioner's decision not to reopen her prior applications because Genier does not present a colorable constitutional claim.  See Whittaker v. Comm'r of Soc. Sec., 307 F. Supp. 2d 430, 441 (N.D.N.Y. 2004) (Sharpe, J.) (citing Latona v. Schweiker, 707 F.2d 79, 81 (2d Cir. 1983) (holding that in the absence of a colorable constitutional claim, the district court lacks subject matter jurisdiction over review of the Commissioner's refusal to reopen a prior final decision)).

Moreover, SSI benefits are not payable for any month prior to the month in which an application is filed.  See 20 C.F.R. § 416.330 (2007).  Thus, Genier must establish that she was disabled between July 30, 2001 and the date of the Commissioner's final decision, October 31, 2003.  See 20 C.F.R. § 416.330 (2007); Bussi v. Barnhart, No. 01 Civ. 4330, 2003 WL 21283448, *1 n. 1 (S.D.N.Y. June 3, 2003) (plaintiff must establish that she was disabled between date she filed application and the date of the Commissioner's final decision).

[6]  Past relevant work is "work . . . done within the last 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 416.960(b)(1) (2007).

Genier has a GED and attended college.  T. 79, 429, 432.  Genier alleges that she became

disabled on January 1, 1974 due to depression and scoliosis.  T. 62, 73.

## IV.  Standard of Review

### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to

engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity

that he or she is not able to do previous work or any other substantial gainful work

considering the claimant's age, education, and work experience, regardless of whether

such work exists in the immediate area, whether a specific job vacancy exists, or whether

the claimant would be hired if he or she applied for work.  42 U.S.C. § 1382c(a)(3)(B)

(2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to

evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he [or she] is not, the
> [Commissioner] next considers whether the claimant has a 'severe
> impairment' which significantly limits his [or her] physical or mental ability to
> do basic work activities.  If the claimant suffers such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him [or her]
> disabled without considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a claimant who is

4

afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2007).

The plaintiff has the burden of establishing disability at the first four steps.  Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform.  Id.

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court,

however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A.  Medical Evidence

Genier alleges that her disability began on January 1, 1974 due to depression and scoliosis.  T. 62, 73.  Genier also alleges that she experiences pain in various parts of her body.  See T. 283, 289, 295.

### 1. Mental

With regard to her mental condition, Genier saw regularly James Gabler, a registered physician's assistant.  In April 2001, Gabler diagnosed Genier as suffering from anxiety and stress, increased Genier's dosage of Zoloft, and advised her to pursue mental health treatment.  T. 212.  In May 2001, Gabler again increased Genier's dosage of Zoloft because Genier reported that she was still having "some anxiety symptoms."  T. 211.  On July 2, 2001, Gabler recommended that Genier try Prozac because she stated that while the Zoloft was helping her depression, she experienced some "body twitching."  T. 208.  On July 26, 2001, Gabler noted that with regard to her depression, Genier stated that she was feeling "a little better, but still has her ups and downs."  T. 207.  In August 2001, Gabler noted that Genier stated that "she has been doing well on the Prozac."  T. 296.

6

From May to November 2001, Genier sought treatment from Barbara Denton, a certified social worker.  T. 221-228.  Denton noted that Genier initially complained of stress related to her teenage daughter's legal issues, providing care for her mother-in-law, and the absence of her husband due to his job.  T. 228.  On October 17, 2001, Denton noted that Genier reported that she was able "to wean herself from her mother-in-law [and] [s]he feels very good about this."  T. 222.  Denton also noted that Genier stated that "her depression comes and goes, but there is an improvement."  Id.  On November 1, 2001, Denton noted that Genier stated that "[s]chool is going well and her grades are mostly A's and B's.  She is very pleased."  T. 221.

On October 10, 2001, Rebekah Radmanesh, M.D., a psychiatrist, conducted a psychiatric assessment of Genier.  T. 219-20.  Dr. Radmanesh found that while Genier had an "adjustment disorder with mixed emotional features," Genier did not appear to have a major psychiatric diagnosis.  T. 220.

On November 8, 2001, Genier was examined by David Meeker, Ph.D., for a New York State disability determination.  T. 229-32.  Dr. Meeker opined that Genier had dysthymic disorder and a phobia of crowds, but her depression was under "reasonably good control" by medication and psychotherapy.  T. 232.  Dr. Meeker noted that Genier's "psychiatric prognosis seems good."  Id.

On January 25, 2002, Abdul Hameed, M.D., a non-examining State agency physician, completed a mental residual functional capacity assessment in which he indicated that Genier's mental abilities to perform work were not limited significantly, and that there was no evidence to indicate a limitation.  T. 239-40.  Dr. Hameed commented that Genier "can understand instructions [and] remember and carry out work related tasks."

T. 241.  However, he noted that Genier had "mild" difficulties in maintaining social

functioning, concentration, persistence, or pace.  T. 253.

## 2. Physical

Genier also alleges disability due to scoliosis.  T. 73.  In July 2001, Gabler reported

that Genier complained that she "still" had back pain which was aggravated by a recent fall.

T. 207.  Gabler suggested that Genier undergo a physical therapy re-evaluation.  Id.  In

August 2001, Gabler again recommended that Genier attend physical therapy.  T. 296.

On December 13, 2001, Genier was examined by Barry Kilbourne, M.D., for a New

York State disability determination.  T. 233-34.  Dr. Kilbourne noted that "[a]pparently on

a[n] x-ray there was minimal scoliosis present but she was noted to have Grade 1

spondylolisthesis."[7]  T. 233.  However, Dr. Kilbourne concluded that there was "no

evidence of disability" with regard to Genier's low back pain.[8]  T. 234.

Genier also complained of experiencing pain in her right hand and arm.  See T. 295.

A nerve conduction study performed on October 18, 2001 showed evidence of "mild carpal

tunnel syndrome on right side."  T. 273.  From November 2001 to February 2002, Genier

was treated for this condition by Lisa Riley, registered physician's assistant, and Douglas

---

[7]  Spondylolisthesis is defined as the "forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth, usually due to a developmental defect in the pars interarticularis."  Dorland's Illustrated Medical Dictionary 1743 (28th ed. 1994) [hereinafter Dorland's].  Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine."  Id. at 1497.

[8]  Dr. Kilbourne also found no evidence of disability with regard to Genier's asthma.  T. 234.  Genier was diagnosed as suffering from an asthmatic condition in June 2001.  T. 210.

Kirkpatrick, M.D.  T. 298-301.  On February 12, 2002, Dr. Kirkpatrick determined that there was "full resolution of [Genier's] carpal tunnel syndrome and no evidence of cubital tunnel syndrome."  T. 298.

Genier also complained of experiencing pain in her legs.  See T. 289.  A nerve conduction study performed on January 10, 2002 was "normal" and failed to show "any electrophysiological evidence of polyneuropathy."  T. 271-72.  In February 2002, Genier continued to complain of leg pain and was diagnosed as suffering from chronic leg pain.  T. 286.

Genier also complained of experiencing pain in her left shoulder.  T. 283.  From October to November 2002, she underwent occupational therapy to treat her shoulder.  T. 268-70.

The record contains a physical residual functional capacity ("RFC") assessment completed by "D. Sterch" on January 31, 2002, which indicated that Genier could lift and carry fifty pounds occasionally, could lift and carry twenty-five pounds frequently, and could stand, walk, or sit six hours in an eight-hour workday.  T. 258.

The record also contains an employability assessment completed by M. Beth Brown, a nurse practitioner, on August 18, 2003.  T. 302-03.  Brown indicated that Genier was limited "moderately" with regard to various mental functions.  T. 302.  Brown also opined that with regard to physical functions, Genier was "very" limited in her abilities to push, pull, and bend; and was limited "moderately" in her abilities to lift, carry, and use stairs or perform other climbing.  Id.

## B.  Treating Physician's Rule

Genier argues that the ALJ improperly rejected the opinions rendered by Gabbler and Brown.[9]

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final determination

---

[9]  Genier also points to additional opinions that were rendered by other sources. Docket No. 9 at 38-40.  However, those opinions were presented in connection with her prior applications and were not reviewed by the ALJ in the present decision.

of disability and a claimant's inability to work rests with the Commissioner.  Id. at 133-34;

see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2007).

Here, Genier contends that the ALJ rejected the findings set forth in the progress

notes made by Gabler.  Docket No. 9 at 38.  However, this claim is unavailing because the

ALJ did not specify that he was rejecting any of Gabler's findings.[10]  See T. 13.  Moreover,

even if the ALJ had clearly rejected any of Gabler's findings, under the Commissioner's

regulations, a physician's assistant is not an "acceptable medical source" who can give a

medical opinion establishing an impairment.  See 20 C.F.R. §§ 416.927(d)(2), 416.913(a),

(d)(1) (2007).  Therefore, any opinion rendered by Gabler would not be entitled to

controlling weight.  See id.; Colondres v. Barnhart, No. 04 Civ. 1841, 2005 WL 106893, at

*6 n.97 (S.D.N.Y. Jan. 18, 2005).

With regard to Brown, she indicated in an employability assessment dated August

2003 that Genier had some limitations with regard to various physical and mental

functions.  T. 302-03.  After reviewing Brown's findings, the ALJ stated that Brown "failed to

supply any objective evidence that would support her assessment, and her conclusion is

contradicted by the weight of the unremarkable medical evidence."  T. 16.  The ALJ did not

clearly reject this assessment but accorded it less weight for this reason.  In any event,

under the Commissioner's regulations, a nurse practitioner is not an "acceptable medical

source" who can give a controlling medical opinion establishing an impairment.  See 20

C.F.R. §§ 416.927(d)(2), 416.913(a), (d)(1).  Therefore, the assessment completed by

---

[10]  Gabler did not provide a specific opinion regarding Genier's ability to perform
the exertional or non-exertional requirements of light work.  See T. 207-08, 210-12,
291-93, 296.

Brown was not entitled to such significant weight.  See id.; Williams v. Comm'r of Soc.

Sec., 423 F. Supp. 2d 77, 82 n.5 (W.D.N.Y. 2006) (finding that employability assessment

completed by nurse practitioner was not entitled to any significant weight).

Accordingly, the Commissioner's determination in this regard is affirmed.


### C.  Subjective Complaints of Pain

Genier contends that the ALJ's decision not to credit fully her subjective complaints

of disabling pain was error.  The Commissioner contends that the ALJ properly considered

Genier's symptoms.

The basis for establishing disability includes subjective complaints of pain even

where the pain is unsupported by clinical or medical findings provided that the underlying

impairment can be "medically ascertained."  20 C.F.R. §§  404.1529, 416.929 (2007); see

also Snell, 177 F.3d at 135.  A finding that a claimant suffered from disabling pain requires

medical evidence of a condition that could reasonably produce such pain.  An ALJ must

consider all symptoms, including pain, and the extent to which these symptoms can

reasonably be expected to be consistent with the medical and other evidence.  20 C.F.R.

§§  404.1529, 416.929; Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Pain

is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should

be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker,

712 F.2d 1545, 1552 (2d Cir. 1983).  If there is a rejection of the claims of disabling pain,

the ALJ must provide specific reasons for doing so.  Saviano v. Chater, 956 F. Supp. 1061,

1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of

impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999).  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings.  Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2007).

Here, the ALJ concluded that "[c]onsidering the dearth of any significant objective medical findings [Genier's] subjective complaints are considered grossly overstated and not credible."  T. 16.  After reviewing the medical documents, the ALJ observed that with regard to Genier's mental condition, Genier saw a social worker, Ms. Denton, beginning in

13

May 2001 and that Ms. Denton noted that Genier reported some relief from various sources of stress, including her teenage daughter, mother-in-law, and husband.  T. 13-14. The ALJ discussed Dr. Radmanesh's psychiatric assessment of Genier in which she concluded that Genier did not appear to have a major psychiatric diagnosis.  T. 14.  The ALJ also noted that in November 2001, Dr. Meeker reported that Genier felt that her mental condition was improving and that the medication was helping.  Id.  The ALJ further noted that Dr. Meeker found Genier's mood to be "euthymic"[11] and that Dr. Meeker opined that while Genier suffered from dysthymic disorder[12] and a phobia of crowds, her depression was under "reasonably good control."  Id.

With regard to the condition of Genier's back, the ALJ commented that in December 2001, Dr. Kilbourne examined Genier and concluded that there was "no evidence of disability on Jean Genier in referencing to her asthma or to her low back pain, which she calls scoliosis."  T. 234.  Dr. Kilbourne wrote, "Apparently on a x-ray there was minimal scoliosis present but she was noted to have Grade 1 spondylolisthesis, but has not been on any particular medication for that per say [sic] and has never had apparently any sort of evaluation for surgery and it is not clear that she has ever had any x-rays such as MRI's or CAT scans."  T. 233.  The ALJ also noted that although Genier "may have had brief courses of physical therapy," it did not appear that she received "any significant evaluation or treatment" for this condition.  T. 15.  The ALJ further discussed that Genier attended college; was able to shop, cook, and perform housework; visited movie theaters and

---

[11]  Euthymic is defined as a state of mental tranquility and well-being; neither depressed nor manic.  Dorland's Illustrated Medical Dictionary 650 (30th ed. 2003).

[12]"[A] mood disorder characterized by depressed feeling . . . ."  Dorland's at 519.

restaurants; used her computer for two hours at a time to research and write school

papers; read; and worked on crossword puzzles.  T. 16.

Thus, there is substantial evidence to support the ALJ's conclusion that Genier's

subjective complaints of pain were not credible.  Accordingly, the Commissioner's

determination on this ground is affirmed.


### D.  Severity

Genier contends that the ALJ failed properly to assess the severity of certain alleged

impairments.  The Commissioner contends that the ALJ properly evaluated severity.

As mentioned above, step two of the sequential evaluation process requires a

determination as to whether the claimant has a severe impairment which significantly limits

the physical or mental ability to do basic work activities.  See Section IV(A) supra.  The

ability to do basic work activities is defined as "the abilities and aptitudes necessary to do

most jobs."  20 C.F.R. §§ 404.1521(b); 416.921(b) (2007).  Basic work activities which are

relevant for evaluating the severity of a physical impairment include physical functions such

as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  Id.;

see Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996).

An impairment is severe if it significantly limits physical or mental abilities to perform

basic work activities.  20 C.F.R. §§ 404.1520(c); 416.920(c) (2007).  Age, education, and

work experience are not evaluated in determining if the impairment or combination of

impairments are severe.  Id.  The severity analysis does no more than "screen out de

minimis claims."  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability claim

rises above the de minimis level, then further analysis is warranted.  Id.  Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  The next inquiry is whether a claimant retained the RFC to perform his or her past work.  This inquiry must consider the combined effect of any impairments, whether or not they are severe, through the remaining steps.  20 C.F.R. §§ 404.1523, 416.923 (2007); Dixon, 54 F.3d at 1031.

Here, the ALJ found that "the medical evidence establishes that [Genier] has obesity, mild scoliosis, a mild adjustment disorder and social phobia, and asthma with normal examination."  T. 17.  The ALJ, however, found that Genier "does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P., Regulations No. 4."  Id.  In contrast, Genier contends that the ALJ failed properly to assess the severity of her spondylolisthesis, mental retardation, obesity, and pain.  Docket No. 9 at 26-34.

Regarding Genier's spondylolisthesis, the ALJ concluded that Genier's complaints of debilitating back pain were unsubstantiated by any objective findings.  T. 15.  The ALJ discussed Dr. Kilbourne's report in which he noted that an x-ray showed a grade 1 spondylolythesis and his finding that Genier has not been on any particular medication for this condition, was never evaluated for surgery, and never underwent an MRI or CAT scan. See T. 13.  The ALJ also noted that Dr. Kilbourne concluded that there was "no evidence of disability" with regard to Genier's lower back pain.  Id.  The ALJ further discussed Genier's testimony regarding her back pain, but he noted that Genier had not received any significant treatment for her back pain.  T. 15.  Moreover, Genier fails to show that her

alleged spondylolisthesis has caused functional limitations that precluded her from engaging in any substantial gainful activity.  See Rivera v. Harris, 623 F.2d 212, 215-16 (2d Cir. 1980) (claimant must show that the disease or impairment has caused functional limitations that precluded her from engaging in any substantial gainful activity).  Thus, there is not substantial evidence to support a finding that Genier's spondylolisthesis was a severe, disabling impairment.

Regarding Genier's alleged mental retardation, the ALJ noted that Dr. Radmanesh estimated that Genier's intellect was in the low average range.  T. 14.  The ALJ also considered the employability assessment completed by Nurse Brown in which she listed "mild mental retardation" as one of Genier's conditions, but noted that Nurse Brown's opinion lacked supporting evidence and that "her conclusion is contradicted by the weight of the unremarkable medical evidence."  T. 16.  As noted, the ALJ does not have to give controlling weight to an opinion from a nurse practitioner.  See 20 C.F.R. §§ 416.927(d)(2), 416.913(a), (d)(1); Williams, 423 F.Supp.2d at 82 n.5.  Accordingly, there is not substantial evidence to support a finding that Genier's alleged mental retardation was a severe, disabling impairment.

With regard to Genier's obesity, the ALJ specifically found that her obesity was a "severe" impairment but found that the condition, either alone or in combination with other impairments, was not of disabling severity.  See T. 17.  It is not sufficient for a claimant to establish the mere presence of a disease or impairment; instead, the claimant must show that the disease or impairment has caused functional limitations that preclude her from engaging in any substantial gainful activity.  See Rivera, 623 F.2d at 215-16.  There is no medical opinion establishing that Genier's obesity caused functional limitations that

17

precluded her from engaging in any substantial gainful activity.  Thus, the ALJ properly found that Genier's obesity was not a disabling impairment.

Finally, Genier also argues that the ALJ should have considered her pain as a non-exertional impairment.  However, as discussed supra in Section V(C)., there is substantial evidence to support the ALJ's discounting of Genier's subjective complaints of pain.  Moreover, pain, alone is not a limitation but rather a symptom which can be associated with limiting RFC factors.  20 C.F.R. §§ 404.1529(a); 416.929(a) (2007) ("In determining whether you are disabled, we consider all your symptoms, including pain . . ."); Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("[S]ymptoms, including pain, are not intrinsically exertional or nonexertional.  It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional").  Thus, this contention is without merit.

Accordingly, the Commissioner's determination in this regard is affirmed.

## E.  RFC

Genier contends that the ALJ's RFC determination and conclusion that she was not disabled are not supported by substantial evidence.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone, 70 F. Supp. 2d at 150; see 20 C.F.R. §§ 404.1545, 416.945 (2007).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel,

69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960 (2007).

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. §§ 404.1566(a), 416.966(a) (2007).  The ALJ may apply the grids or consult a vocational expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2007).  If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations."  Pratts, 94 F.3d at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)).  Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  Bapp, 802 F.2d at 604-05.  Work capacity is "significantly

diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity. Id. at 605. Non-exertional impairments include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(1)(vi), 416.969a(c)(1)(vi) (2007). The applicability of the grids should be considered on a case-by-case basis. Bapp, 802 F.2d at 605. However, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 603.

The regulations provide that when a claimant's ability to perform a full range of a particular category of work is limited, or where the transferability of her work skills to other jobs are at issue, the ALJ may use the services of a vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e) (2007); see Bapp, 802 F.2d at 603. The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given her functional limitations. See Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004). A vocational expert's testimony is useful only if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir.1984). The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the vocational expert's testimony. Colon, 2004 WL 1144059, at *6. However, there must be "'substantial record evidence to support the assumption upon which the vocational expert

20

based his opinion.'" Id. (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

Here, the ALJ found that Genier had no past relevant work history but she possessed the RFC to perform light work.  T. 17.  Light work requires that a claimant be capable of the following:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b) (2007).

The ALJ used a vocational expert to determine if work existed in the national economy that Genier could perform.  See T. 450-60.  The ALJ asked the vocational expert to consider an individual of Genier's age, education,[13] work experience, and RFC, who was limited to lifting twenty pounds; who must avoid frequent, but not occasional, use of the dominant right hand; who would be limited to simple, entry-level rote work where no complex decision-making, scheduling, planning, and report-writing were involved; and who could work in proximity, but not in coordination, with groups of five or less people.  Id.  The vocational expert testified that there was work available as a "housekeeping/cleaner"

---

[13]  The ALJ asked the vocational expert to assume that the hypothetical individual had a GED.  T. 449.  While Genier testified that she had her GED and took college courses, as previously noted, it is unclear whether Genier actually obtained a college degree.  See Section III supra.  The Court finds that the assumption of an individual with a GED was not prejudicial to Genier.

(123,570 jobs in the national economy), office helper (1.2 million jobs in the national economy), and a surveillance system monitor (220,000 jobs in the national economy).  T. 452-53.  The ALJ also asked the vocational expert to assume that the individual was limited to sedentary work and must avoid frequent use of their hand for fingering.  T. 454. The vocational expert testified that there was work available as a preparer (105,000 jobs in the national economy).  T. 454-456.  The ALJ then asked the vocational expert to assume that the individual would need to change positions as needed with a stand/sit option at will. T. 455.  The vocational expert responded that the surveillance system monitor and preparer positions were still available.  T. 455-56.

However, Genier contends that the ALJ failed to present the following limitations to the vocational expert: constant pain; sleep disorder; inability to bend, lift, push, or pull; depression; borderline intelligence; anxiety around other people; limited ability to concentrate; need to lie down after walking; limitation of sitting for ten minutes; and limited standing and walking.  Docket No. 9 at 35.  The Court notes that Genier fails to cite specific medical evidence to support this contention.

Regarding Genier's alleged "constant pain," as previously discussed, there is substantial evidence to support the ALJ's conclusion that Genier's subjective complaints of pain were not fully credible.  See Section VC supra.  Thus, the ALJ properly did not include such an assumption in the hypothetical questions.

Regarding Genier's alleged "sleep disorder," reports from Drs. Kilbourne and Meeker, and a progress note from Denton, suggest that Genier alleged sleeping problems. T. 226, 230, 234.  While there are assertions from Genier that she suffered from a sleep condition, these do not constitute substantial evidence to support an assumption based

upon a "sleep disorder."  Thus, the ALJ properly did not include such an assumption in the hypothetical questions.

Regarding Genier's alleged "inability to bend, lift, push, or pull," in July and September 2001, Gabler diagnosed Genier as suffering from chronic low back pain, and recommended on both occasions that she attend physical therapy.  See T. 207, 296. Nothing in the record indicates that Genier underwent such an evaluation upon Gabler's recommendations.  In November 2001, Dr. Meeker noted that Genier "denie[d] any significant problems with activities of daily living except for the fact that leaning over, for example, to tie her shoes, may bother her back."  T. 231.  In December 2001, Dr. Kilbourne noted that Genier stated that "[i]t hurts her to push, pull, move around, twist, turn and bend . . . . [Genier also claimed] she has been listed to have significant restrictions as far as how much she can lift, pull and tug, therefore she does very little consequently."  T. 233. Nothing in the relevant evidence establishes that such restrictions were placed on Genier.

In October 2002, Genier underwent occupational therapy for her shoulder, but she was discharged after five visits and it was noted that she stated that her shoulder "was feeling better on [the] last visit."  T. 270.  Moreover, the occupational therapy discharge note states that Genier cancelled two appointments and failed to show up for two appointments.  Id.

In the September 2003 employability assessment, Brown indicated that Genier was very limited in her abilities to push, pull, or bend, and limited moderately in her ability to lift. T. 302.  However, as noted, the ALJ found that the assessment lacked supporting evidence. T. 16.

Although the foregoing indicates that Genier was diagnosed as suffering from low

back pain and suggests that she may have experienced some discomfort during bending, pushing, and pulling, there is not substantial evidence to support an assumption that she had a complete "inability" to bend, lift, push, or pull.  Thus, the ALJ properly did not include such an assumption in the hypothetical questions.

Regarding Genier's alleged depression, the relevant evidence indicates that Genier was diagnosed by Gabler as suffering from depression in 2001, that she was prescribed antidepressant medications, and that she saw a social worker, Denton, from May to November 2001.  See T. 207, 208, 211, 221-28, 296.  However, the mere presence of a disease or impairment is insufficient; rather, the claimant must show that the disease or impairment caused functional limitations that precluded her from engaging in any substantial gainful activity.  See Rivera, 623 F.2d at 215-16; see also  20 C.F.R. §§ 404.1569a(c)(1)(i), 416.969a(c)(1)(i) (2007) (depression may result in difficulty functioning which is a nonexertional limitation).

While Dr. Radmanesh noted in October 2001 that Genier reported having "low energy," there is nothing to suggest that this subjective complaint was a result of her depression.  See T. 219.  Additionally, although Dr. Hameed, a non-examining State agency physician, indicated in a January 2002 psychiatric review technique form that Genier was limited mildly in maintaining social functioning, concentration, persistence, or pace, see T. 253, Dr. Hameed noted in a mental RFC assessment that Genier was not limited significantly or there was no evidence of limitation in her understanding, memory, sustained concentration and persistence, social interaction, and adaptation.  T. 239-40.

Moreover, the relevant medical evidence suggests some degree of improvement in Genier's depression.  On August 30, 2001, Gabler noted that Genier stated that "she has

24

been doing well on the Prozac." T. 296. On October 17, 2001, Denton noted that Genier stated that "the depression comes and goes, but there is an improvement." T. 222. On November 1, 2001, Denton noted that Genier stated that she was "very pleased" because "[s]chool is going well and her grades are mostly A's and B's." T. 221. On November 8, 2001, Dr. Meeker reported that during the disability examination, Genier stated that at times she felt depressed, but "she went on to state that she feels better than she has before and the medication is helping." T. 231. Dr. Meeker opined that "her depression is under reasonably good control by her treatment which includes medication and psychotherapy." T. 232. Further, Drs. Meeker and Radmanesh examined Genier and described her observed mood as "euthymic." T. 219, 231. Accordingly, there is not substantial evidence to support an assumption that Genier's depression resulted in functional limitations. Thus, the ALJ properly did not include such an assumption in the hypothetical questions.

With regard to Genier's alleged "borderline intelligence," Dr. Radmanesh commented that Genier's "intellect is in the low average range and guess[ed] [it was] somewhere in the mild mental retardation range" and Brown noted, without supporting medical evidence, that Genier suffered from mild mental retardation. The Court finds that, particularly in the face of the contrary evidence in the record, these statements do not constitute substantial evidence to support an assumption of "borderline intelligence." See T. 220, 302. Therefore, the ALJ properly did not include such an assumption in the hypothetical questions.

With regard to Genier's alleged "anxiety around other people," to the extent that Genier is arguing that she experienced anxiety in groups of more than five people, one of

the assumptions posed by the ALJ encompassed such a condition.  Specifically, it asked

whether the hypothetical individual could work in proximity but not in coordination with a

group of five or less people.  See T. 452-453.  This assumption is supported by substantial

evidence.  In November 2001, Dr. Meeker examined Genier and noted that Genier

complained "of her anxiety and panic and this is especially a problem when she is around

lots of people.  This appears to be the sole or main cause of this anxiety.  The claimant

does appear to have a phobia or uncomfortableness around large groups of people."  T.

231.  He opined that Genier is "phobic of crowds."  T. 232.

        To the extent that Genier is arguing that she experiences anxiety in groups of five or

less people, there is not substantial evidence for this contention.  While Brown indicated

that Genier was limited moderately in her ability to interact appropriately with others, see T.

302, this conclusion does not constitute substantial evidence that Genier experienced

"anxiety around other people."  Moreover, Dr. Hameed indicated in the January 2002

mental RFC assessment that Genier was not limited significantly in her abilities to work in

coordination with or proximity to others without being distracted by them; to accept

instructions and respond appropriately to criticism from supervisors and to get along with

coworkers or peers without distracting them or exhibiting behavioral extremes.  T. 240.  He

further opined that there was no evidence of limitation in Genier's abilities to interact

appropriately with the general public; and to ask simple questions, request assistance, or to

maintain socially appropriate behavior.  Id.

        In sum, to the extent that Genier is arguing that she experiences anxiety in groups of

more than five people, the ALJ in fact provided an assumption which encompassed such a

condition.  See T. 452-453.  To the extent that Genier argues that she experienced anxiety

26

in groups of five or less people, there is not substantial evidence for this contention. Accordingly, the ALJ properly did not include such an assumption in the hypothetical questions.

With regard to Genier's alleged "limited ability to concentrate," in November 2001, Dr. Meeker reported that Genier "allege[d] difficulties with attention and concentration stating sometimes 'I don't stay focused in school.  I can lose attention.' " T. 231.  However, Dr. Meeker concluded that Genier's "psychiatric prognosis seems good."  T. 232.

Dr. Hameed indicated in the mental RFC assessment that Genier had "mild" difficulties in maintaining concentration, persistence, or pace, but he also commented that Genier's attention, concentration, and memory were "fairly intact."  T. 241, 253.  Moreover, he also opined that Genier was not limited significantly in her abilities to carry out detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  T. 240.  Dr. Hameed found no evidence of a limitation with regard to Genier's abilities to carry out very short and simple instructions and to make simple work-related decisions.  T. 240-241.

Brown indicated in the employability assessment that Genier was limited "moderately" in her ability to maintain concentration.  T. 302.  However, as noted, the ALJ found no evidence to support Brown's findings.  See T. 16.  Accordingly, while there is some suggestion that Genier may have experienced a lack of concentration at times, there

is not substantial evidence to support an assumption based on a "limited ability to concentrate."  Thus, the ALJ properly did not include such an assumption in the hypothetical questions.

With regard to Genier's alleged "need to lie down after walking" and restriction of "sitting for ten minutes," these contentions are not supported by the relevant medical evidence.  Therefore, the ALJ properly did not include such assumptions in the hypothetical questions.

With regard to Genier's alleged "limited" abilities to stand and walk, Genier does not specify how her abilities to stand and walk are limited.  Brown commented that Genier was limited from "prolonged standing," but as noted by the ALJ, there is no evidence to support Brown's conclusion.  T. 16, 303.  Also, on June 7, 2001, Denton noted that Genier reported that she enjoyed walking.  T. 227.  Moreover, the physical RFC assessment completed by a nonexamining medical consultant indicates that Genier was limited to about six hours in an eight-hour workday of standing and/or walking.  T. 258.   Therefore, there is not substantial evidence to support an assumption of "limited standing and walking."  Thus, the ALJ properly did not include such an assumption in the hypothetical questions.

Accordingly, the Commissioner's determination in this regard is affirmed.

## VI.  Conclusion

WHEREFORE, for the reasons set forth above, it is hereby

   **ORDERED** that the decision denying disability benefits be **AFFIRMED**, Genier's

motion for a finding of disability (Docket No. 9) be **DENIED**, and the Commissioner's cross-

motion (Docket No. 11) be **GRANTED**.

**IT IS SO ORDERED.**

DATED: March 27, 2007
          Albany, New York

_____
United States Magistrate Judge